UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MORRIS WARREN,

        Plaintiff,

v.

DISTRICT OF COLUMBIA,

        Defendant.

Civil Action 01-0349 (HHK)

## MEMORANDUM OPINION

In September 2005, the Court denied defendant District of Columbia's motion for summary judgment without prejudice to renewal following a period of discovery. *See* Memorandum Opinion and Order ("Mem. Op.") (Sept. 19, 2005) [Dkt. No. 41]. Presently, before the Court is defendant's renewed motion for summary judgment, which plaintiff has opposed. Upon consideration of the parties' submissions and the entire record, the Court will grant defendant's motion and enter judgment accordingly.

### I. BACKGROUND

As established by previous rulings in this case, plaintiff is a District of Columbia prisoner in the custody of the Bureau of Prisons. He sues the District of Columbia under 42 U.S.C. § 1983 for alleged unconstitutional conditions of confinement during his incarceration at the privately owned Northeast Ohio Correctional Center ("NEOCC") in Youngstown, Ohio.[1] Plaintiff asserts that during his confinement there between August 1997 and September 1999, he

---

[1] During times relevant to this action, the District of Columbia contracted with the privately owned Corrections Corporation of America to house District of Columbia prisoners at NEOCC.

was subjected to "[un]suitable [and] inappropriate [] housing [for] D.C. prisoners." Amended Complaint at 5. Plaintiff alleges specifically that he was "denied cell running water, was not allowed prescription medication . . . was not fed food over a 24 hour period," and that "tear gas [was] everywhere in the pod and cells." *Id*. Plaintiff further alleges that "we were taken out the cells and force[d] to lay on the cold floor naked," and that he contracted yellow jaundice "from the medical staffs dirty needle." He also claims that he suffered a stroke. *Id*. Plaintiff seeks $5 million in damages.

Plaintiff's claims arising from alleged events occurring between May 20, 1997, and October 20, 1998, are barred by a class action settlement agreement. *See* Mem. Op. at 3; *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004). The purpose of discovery was to determine whether plaintiff could establish any claims outside of the settlement bar period. *See* Mem. Op. at 5-6.

## II.  DISCUSSION

The Court should grant summary judgment in favor of a party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Mem. Op. at 2-3 (discussing standard of review). As plaintiff was advised, when responding to a summary judgment motion, he "may not rest upon [his] mere allegations or denials . . . , but [his] response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Order (Feb. 1, 2006) (quoting Fed. R. Civ. P. 56(e)).

As an initial matter, defendant asserts that summary judgment is warranted because plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). While the evidence supports this defense, the exhaustion requirement is not jurisdictional. *See Woodford v. Ngo,* 126 S.Ct. 2378, 2392 (2006). The Court therefore is not precluded from proceeding to the merits. Because the case was remanded for further consideration of the merits, *see Warren*, 353 F.3d at 40, the Court declines to enter judgment on this procedural ground.

Proceeding to the merits, plaintiff has not refuted with any credible evidence defendant's statement of material facts it contends are not in dispute [Dkt. No. 55-1], which it derived mostly from plaintiff's deposition testimony. Specifically, plaintiff has not credibly refuted that he received $500 as a member of the settlement class, Def.'s Facts ¶¶ 5, 7, that his property was destroyed in March 1998, *id*. ¶ 10, and that he was forced to lie naked on the floor and was denied prescription medication between August 1997 and August 1998. *Id*. ¶¶ 12, 14. Moreover, plaintiff has not credibly refuted that he was never diagnosed with, or received treatment for, yellow jaundice (allegedly resulting from prison officials' use of dirty needles to draw blood), pneumonia (allegedly resulting from lying on the floor naked), or a stroke. *Id*. ¶¶ 11, 13, 15. In his unsworn opposition, plaintiff asserts generally that he "was treated unconstitutional [sic] by defendant" between October 20, 1998, and September 23, 1999. Pl.'s Response to the Defendant's Statement of Material Fact as to Which There is No Genuine Issue that the Court Relie [sic] on to Grant Summary Judgment ("Pl's Opp.") [Dkt. No. 60] at 1. This conclusory statement belies not only plaintiff's deposition testimony but also his earlier statements where he could "not confirm an exact date" of the incidents and could only provide a

wide "approximate" range "between 1998 and 1999." Pl.'s Statement of Material Facts as to Which There is No Genuine Issue Pursuant to Local Rule 7(h) and 56.1 [Dkt. No. 38] ¶¶ 8-12. To the extent that plaintiff may have pleaded an Eighth Amendment claim based on the foregoing incidents, he has failed to present a genuine issue of material fact with respect to their timing and any resulting injury. Because plaintiff's own testimony establishes that the incidents occurred, if at all, during the settlement bar period, the resulting claims are barred. *See* Mem. Op. at 3.

     As for the remaining arguably post-settlement claims stemming from the alleged denial of running water in plaintiff's cell for 72 hours, the denial of food for 24 hours, and the daily exposure to tear gas for a year, defendant asserts that plaintiff has not stated a "viable constitutional claim" for which the District of Columbia may be held liable. Def.s' Memorandum of Law and Points of Authority in Support of Defendant the District of Columbia's Motion for Summary Judgment ("Def.'s Mem.") [Dkt. No. 54-1] at 3. A municipality, such as defendant, may be held liable under 42 U.S.C. § 1983 only when it is shown that the individual wrongdoer was acting pursuant to an unconstitutional policy, practice or custom promulgated or sanctioned by the municipality. *Warren*, 353 F.3d at 38; *Daskalea v. District of Columbia,* 227 F.3d 433, 441 (D.C. Cir. 2000); *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis and internal quotation marks in original). Section 1983 liability cannot be based on a

theory of *respondeat superior* or vicarious acts. *Graham v. Davis*, 880 F.2d 1414, 1421 (D.C. Cir. 1989) (citing *Monell v. Dep't. of Social Services of the City of New York*, 436 U.S. 658, 691 (1978)). Rather, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown,* 520 U.S. at 405.

Defendant contends that (1) "most of [plaintiff's] allegations do not rise to the level of an Eighth Amendment violation." Def.'s Mem. at 6; (2) plaintiff has not demonstrated that defendant knew about the alleged incidents and failed to take action. *Id*. at 12-13;[2] and (3) plaintiff has not shown that defendant was the "moving force" behind the alleged constitutional violations by way of an unconstitutional policy, practice or custom. *Id*. at 9. The Court need not dwell on the first factor because, assuming that a constitutional violation occurred, the record fails to present a triable issue on the second and third factors.

The Eighth Amendment protects prisoners from the "wanton and unnecessary infliction of pain" and conditions that are "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court recognizes "two categories of prisoner cases actionable under the [Eighth] amendment . . . [those] regarding prisoners' conditions of confinement . . . and those alleging excessive use of force." *Chandler v. District of Columbia Department of Corrections,* 145 F.3d 1355, 1360 (D.C. Cir. 1998) (internal citations omitted). To prevail on a prison conditions claim, applicable here, plaintiff must show that prison officials were deliberately indifferent to a serious medical need or

---

[2] *See Warren*, 353 F.3d at 39 ("[a]ppointed counsel emphasizes 'deliberate indifference' theory of municipal liability").

injury or the suffering of "'unnecessary and wanton infliction of pain.'" *Cox v. District of Columbia*, 834 F. Supp. 439, 441 (D.D.C. 1992) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 182-183 (1976)); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (prison official held liable only if he "knows of and disregards an excessive risk to inmate health or safety"). Deliberate indifference "simply means that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction." *Warren*, 353 F.3d at 39 (citation omitted).

Plaintiff asserts that defendant received actual or constructive notice of the unconstitutional conditions from the following sources: a *Washington Post* newspaper article dated October 12, 1997, allegedly reporting that the Department of Corrections was sending "a monthly audit team to Ohio to investigate the conditions and to talk to the prisoners," Pl.'s Opp. at 4; a cover letter written by Corrections Trustee John L. Clark following his visit to the facility in November 1998; and the settlement agreement. *Id*. at 4-5.

Plaintiff has not explained how the settlement agreement, which logically pertains to events covered by the settlement period, would have provided notice of subsequent violations. He has not supplied the *Washington Post* article, but his description of its content reveals no support for his notice claim. And, the Clark letter refers to events that occurred during the settlement bar period. *See* Def.'s Reply in Support of its Motion for Summary Judgment or, in the Alternative, for Sanctions [Dkt. No. 40], Ex. B (Trustee Report). In sum, plaintiff has not set forth any facts from which a reasonable juror could find that the District of Columbia knew or

should have known about the alleged post-settlement violations from these, or any other, sources.[3]

Even if plaintiff could satisfy the notice requirement, his claim could not proceed because his supporting documents, such as they are, *see* Pl's Opp., Ex. A, are consistent with defendant's evidence showing that after the settlement, the District of Columbia monitored NEOCC for "contract compliance and constitutional treatment of District of Columbia inmates" by, *inter alia*, retaining a full-time, on-site contract monitor. Gardner Decl. ¶ 18. No reasonable juror could find on this record that the District of Columbia failed to take action in the wake of known constitutional violations or that the alleged wrongful behavior of NEOCC staff committed after the settlement was the result of an unconstitutional policy, custom or practice of the District of Columbia.

### III. CONCLUSION

Plaintiff has not sustained his burden in opposing the summary judgment motion by setting forth facts that demonstrate the existence of a genuine issue of material fact on his claim of deliberate indifference. In the absence of any evidence of deliberate indifference or any other

---

[3] Plaintiff had previously asserted that the District of Columbia had also received notice from his complaints to the mayor and Department of Corrections Director Odie Washington and his wife's telephone calls. *See Warren*, 353 F.3d at 38. Plaintiff appears to have abandoned these claims, but, in any event, he has not provided any documentation of his complaints or his wife's telephone calls and has not confirmed when they were conveyed. Thus, there is no evidence from which a reasonable juror could find for plaintiff on these assertions. Moreover, plaintiff has not refuted defendant's evidence establishing that he did not submit grievances about the alleged post-settlement incidents. *See* Def.'s Ex. E, Declaration of Brian Gardner ¶ 10. Thus, there are no facts from which an inference could be drawn that the District should have known about plaintiff's circumstances via its full-time, on-site contract monitor, *id*. ¶ 18, whose responsibilities apparently included "report[ing] instances of conduct [] described in Plaintiff's Complaint." *Id*. ¶ 19.

theory to establish a claim of municipal liability under 42 U.S.C. § 1983, the Court concludes that the defendant, the District of Columbia, is entitled to judgment as a matter of law. Accordingly, its motion for summary judgment is granted.[4]

                                                          _____s/_____
                                                          Henry H. Kennedy, Jr.
                                                          United States District Judge

Date: September 5, 2006

---

[4] A separate Order accompanies this Memorandum Opinion.